UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

JOHN WILLIAMS,
Institutional ID No. 0251627

                    Plaintiff,

v.                                               No.  5:24-CV-00248-H

MARSHA MCLANE, *et al.*,

                    Defendants.

## OPINION AND ORDER

Plaintiff John Williams, a self-represented sexually violent predator (SVP) confined in the Texas Civil Commitment Center (TCCC), filed this civil-rights action against Defendants Marsha McLane, the Executive Director of the Texas Civil Commitment Office (TCCO), and Management and Training Corporation (MTC), the company that operates the TCCC.  He alleges that Defendants implemented policies that impose unconstitutionally punitive conditions in violation of his Fourteenth Amendment due process rights. Defendant McLane moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. Nos. 21, 23.  And Defendant MTC moved to dismiss under Rule 12(b)(6). Dkt. No. 25.  Plaintiff responded to both motions.  Dkt. Nos. 28, 29.  Plaintiff also moved for partial preliminary injunction, Dkt. No. 30, which Defendant MTC opposed, Dkt. No. 31.

Now, as explained below, after reviewing the parties' pleadings and the applicable law, the Court finds that each of the challenged policies is reasonably related to the purposes of civil commitment and satisfies the requirements of due process.  Thus, the Court grants

Defendants' motions and dismisses Plaintiff's complaint.  Likewise, the Court denies

Plaintiff's motion for partial preliminary injunction.  Dkt. No. 30.

1.    **Background[1]**

      A.    **Facts**

      Plaintiff was adjudicated as an SVP in 2014 and civilly committed under Texas

Health & Safety Code Chapter 841 for supervision and sex offender treatment.  His civil

commitment was modified in September 2015, and he was placed in the tiered residential

treatment program at the TCCC.  He progressed from Tier 1 to Tier 3 of the program, but

he was later designated as a treatment refuser and demoted back to Tier 1.

      He complains that in January 2016, the TCCO imposed an expanded cost-recovery

policy after Chapter 841 was amended, requiring him to pay 33.3% of his income every

month to pay for the costs of GPS monitoring, treatment, and housing.  He asserts that his

payment was later reduced to 25% of his income, where it remains today.  He asserts that

the cost-recovery portion of the amendment was not meant to be retroactive, so he does not

believe that it should apply to him.  Dkt. No. 14 at 10.  Plaintiff did not pay his expanded

cost-recovery obligations, and by the end of 2016, he owed $10,916.02.  *Id.*  So, in April

2017, his commissary, pay-phone, and package privileges were restricted, and he was

prohibited from spending money out of his account until he paid the delinquent debt.  *Id.*

      By January 2018, his debt totaled $19,991.02, and his commissary, pay-phone, and

package restrictions remained in place.  His debt continued to increase until September

2018, when he stopped receiving retirement benefits.  In June 2019, he lost additional

---

[1] Because this case is still in the pleading stage, the Court views all facts in the light most favorable to
Plaintiff and accepts his well-pled facts as true.

privileges, including cell phone eligibility, and participation in leisure activities and events at the facility.  He was also required to participate in a financial literacy course.  *Id*. at 11.  He claims that he progressed to Tier 3 and should have been eligible to have his ankle monitor removed, but he was forced to continue wearing it as punishment for his delinquent debt.

His debt increased again when he received stimulus checks in 2021 and 2022, bringing his total to $27,687.00.  He asserts that he has faced automatic punishment—the restriction of his privileges—continually since 2016, without any related disciplinary charge or process.  He contends that he filed grievances and received unfavorable responses, but he was never afforded any pre- or post-deprivation hearing.

He claims that because he felt like he was in a "de facto debtor's prison," he lost motivation to continue progressing in his treatment.  So, in June 2022, he exercised his right to refuse treatment.  But he was designated as a treatment refuser and demoted from Tier 3 to Tier 2 under TCCO policy.  Then, on March 2, 2023, he was demoted again, returning to Tier 1 status.  MTC then confiscated his television because Tier 1 residents are not allowed to possess televisions.

### B.    Plaintiff's Claims

Plaintiff now sues Defendants McLane and MTC for implementing and enforcing various unconstitutional policies at the TCCC.  Specifically, he points to five official TCCO policies promulgated by McLane and one MTC policy that he contends are unconstitutionally punitive in violation of his Fourteenth Amendment substantive due process rights.

He complains that TCCO Policy 3.5, which requires him to pay a percentage of his income as "cost recovery" for GPS monitoring, housing, and treatment costs, is punitive

both facially and as applied because it imposes privilege restrictions automatically for failure to comply.  Dkt. No. 14 at 5.  He contends that instead, the TCCO must refer delinquent debt to the Attorney General for collection under Texas Government Code § 2107.001 et seq.  Similarly, he contends that TCCO Policy 3.38 imposes unconstitutional punishment— the deprivation of package and commissary privileges—for having delinquent debt, for exercising the right to refuse treatment and evaluations, or for new criminal charges.  *Id.* at 6.  Next, he asserts that TCCO Policy 3.36 imposes an unconstitutional punishment— requiring him to wear a GPS ankle monitor despite his confinement in a secure facility—for disciplinary infractions, delinquent cost-recovery debt, criminal charges, or other facility rule or treatment violations.  *Id.* at 7.  He also claims that TCCO Policy 4.5 imposes punishment "in 9 different ways" for exercising the right to refuse treatment.  *Id.*  And he alleges that TCCO Policy 4.1, which permits a tier reduction if the treatment team determines that a client has demonstrated a regression in treatment or behavior, is unconstitutionally vague and allows punishment without giving notice of the specific conduct it proscribes.  *Id.*  at 8.

He asserts that each of these TCCO policies imposes punishment automatically, without affording civilly committed individuals with proper notice or opportunity to be heard.  Thus, he complains that TCCO Policies 3.5, 3.38, 3.36, 4.5 and 4.1, as implemented and enforced by Defendant McLane, violate both his substantive and procedural due process rights under the Fourteenth Amendment.  *Id.* at 5–9.

He also contends that MTC Policy 906TH-12-18-1, which prohibits Tier 1 residents from possessing a television, is unconstitutionally punitive.  *Id.* at 9.  He acknowledges that residents in Tiers 2–4 are allowed to possess a television.  *Id.*  But he asserts that the policy

4

imposes automatic punishment—deprivation of property—without due process if a resident in an advanced Tier is demoted back to Tier 1. *Id.*

Finally, he contends that Defendants' policies also violated his rights under the Texas Constitution.

Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages. And apart from the permanent injunction he seeks in his complaint, Plaintiff also seeks a partial preliminary injunction to compel Defendants to restore his privileges and his television, remove the GPS monitoring requirement, return him to Tier 3 status, suspend all cost-recovery debt collection attempts, and stop imposing any punishment. Dkt. No. 30.

## 2.    Defendant McLane's Motion

Defendant McLane now moves to dismiss Plaintiff's complaint under Rules 12(b)(1) and 12(b)(6). McLane asserts that Plaintiff's official-capacity claims against her must be dismissed for lack of subject matter jurisdiction because she is not a suable "person" under Section 1983, she is entitled to sovereign immunity, and the *Ex Parte Young*[2] doctrine does not apply. McLane maintains that Plaintiff lacks standing to challenge the TCCO's policies because he has failed to allege a constitutional injury. Alternatively, McLane argues that Plaintiff's official-capacity claims should be dismissed for failure to state a claim.

She also contends that Plaintiff's individual-capacity claims should be dismissed for lack of subject matter jurisdiction and for failure to state a claim. Specifically, she argues that Plaintiff's claims about the retroactive application of Texas Health & Safety Code § 841.084 and his resulting cost-recovery debt, privilege restrictions, and treatment-refusal designation are time barred. Next, she asserts that Plaintiff has already fully litigated his

---

[2] 209 U.S. 123 (1908).

claims that the 2015 amendments to Chapter 841 should not apply to him and denied him due process and that the statute is unconstitutional as applied to him, so to the extent that he reasserts these claims here, they are barred by res judicata, collateral estoppel, and stare decisis.

McLane argues that Plaintiff has failed to state a viable facial constitutional challenge to the Sexually Violent Predators Act (SVPA) because he has failed to allege that there is no set of circumstances in which the Act would be valid and that any as-applied challenge to the Act is foreclosed by Fifth Circuit precedent. She also contends that Plaintiff has failed to state a viable substantive due process claim.

She then argues that each of the policies challenged by Plaintiff is reasonably related to the twin goals of civil commitment—the long-term supervision and treatment of sexually violent predators. She contends that the privilege-restriction policies that Plaintiff complains about are intended to incentivize progression through treatment, and conversely, to disincentivize regression in treatment.

She addresses each challenged policy and privilege restriction in turn. She asserts that the Texas Supreme Court has determined that the SVPA's GPS-monitoring provisions do not offend either the United States Constitution or the Texas Constitution. And she says that because the restriction of Plaintiff's commissary and package privileges was *de minimis*, these privileges do not merit constitutional protection. Then, McLane argues that Plaintiff fails to state a viable constitutional claim that his privileges were restricted for refusing to participate in a polygraph or plethysmograph (PPG) examination because these are reasonable requirements of treatment, and he faced no criminal prosecution. Likewise, McLane asserts that restricting privileges based on pending criminal charges is reasonable

and fails to state a claim.  But she also points out that Plaintiff lacks standing to raise this claim because he has not alleged that he personally has pending criminal charges or that his privileges were restricted based on this policy.  McLane next argues that Plaintiff's challenge to manner of TCCO's cost-recovery debt collection fails to state a viable claim because he has not shown that she was required to enact different rules under state law, and, in any event, the policy is reasonably related to the goals of long-term supervision and treatment. Finally, McLane argues that the confiscation of Plaintiff's TV, under MTC policy, after he regressed to Tier 1 is *de minimis* and fails to implicate the constitution.  In short, McLane argues she did not implement policies to arbitrarily punish Plaintiff; each policy was implemented to encourage Plaintiff's progression through treatment and support the goals of civil commitment.

McLane then turns to Plaintiff's procedural due process claims.  She argues that Plaintiff lacks a protectible interest in having his debt collected in any other way, and that in any event, he received notice and an opportunity to be heard.  Likewise, she asserts that Plaintiff received all the process he was due with regard to the restriction of his privileges.

Then McLane argues that Plaintiff has failed to state a viable facial challenge to Policy 4.1, which provides for a Tier reduction if a committed SVP demonstrates a regression in treatment or behavior.  McLane contends that on its face, the policy is neither unconstitutionally vague nor overbroad.

McLane also asserts that she is entitled to qualified immunity for all of Plaintiff's individual-capacity claims for monetary relief because he has failed to demonstrate that she violated any of his clearly established constitutional rights or that her actions were

objectively unreasonable in light of clearly established law.  Thus, she asks the Court to dismiss all of Plaintiff's federal claims.

Finally, McLane urges the Court to dismiss Plaintiff's state-law claims for lack of jurisdiction, or alternatively, to decline to exercise any supplemental jurisdiction it retains over them.  She nonetheless explains why Plaintiff has failed to state a viable claim under the Texas Constitution and asserts her entitlement to official immunity under Texas law.

In sum, McLane asks the Court to dismiss Plaintiff's complaint and all of his claims against her for lack of jurisdiction, failure to state a claim, or both.

**3.    Defendant MTC's Motion**

Defendant MTC moves to dismiss Plaintiff's claims against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Specifically, MTC argues that its electronics allowance policy bears a reasonable relationship with the twin goals of supervision and treatment of SVPs.  MTC asserts that it is clear from Plaintiff's pleadings that this policy incentivizes treatment progression and disincentivizes regression because privileges increase as residents progress through the tiers.  So MTC says its policy is not punitive.  MTC also contends that the deprivation of the television is a *de minimis* restriction that cannot implicate due process concerns.  Thus, MTC argues that Plaintiff has failed to state a substantive due process violation for the confiscation of his television.  And because of the *de minimis* nature of the deprivation, MTC asserts that no more procedural protections were required.  Thus, MTC argues that Plaintiff received all the process to which he was due.  As a result, MTC asks the Court to dismiss Plaintiff's television claim under both federal and state law.

4.    **Legal Standards**

A.    **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012). "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim. *Id.* (internal quotations omitted) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998)).

"Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cty., Tex.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The district court has substantial authority to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 413 (quotation omitted). A court should only grant a motion to dismiss for lack of subject matter jurisdiction when it is convinced that the plaintiff cannot prove any set of facts that would entitle him to relief. *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010. The plaintiff permanently bears the burden of showing the existence of subject-matter jurisdiction. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977).

**B.    Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff "fails to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). In reviewing a motion to dismiss under Rule 12(b)(6), a district court must generally examine only the complaint and any attachments to the complaint. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). But a court may consider extrinsic documentary evidence if (1) the document is attached to a defendant's motion to dismiss, (2) the document is referred to in the plaintiff's complaint, and (3) the document is "central" to the plaintiff's claim. *Id.* at 498–99.

The plaintiff must plead "enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]o survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief–including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, at 555)).

A claim is facially plausible when it asserts facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This determination is context-specific and requires the court to draw upon its own experience and common sense. *Id.*

10

### C.   Section 1983 and Qualified Immunity

Section 1983 "provides a claim against anyone who 'under color of any ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "A plaintiff makes out a [Section] 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 23, 236 (5th Cir. 2008)).

But even if a defendant can be shown to have violated another's constitutional rights, the defendant may not be liable under Section 1983. Defendants who perform discretionary duties—such as police officers and jailers—may invoke the affirmative defense of qualified immunity in response to a plaintiff's Section 1983 suit. Qualified immunity applies "when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276–80 (5th Cir. 1992). In so doing, the court should not assume that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be sure that, if the facts alleged by plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989).

D.      **Fourteenth Amendment**

Involuntarily committed persons are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982).  So, civilly committed SVPs, like pretrial detainees, are entitled to be free from conditions that amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Even so, "the Constitution . . . affords a state wide latitude in crafting a civil commitment scheme." *Brown v. Taylor*, 911 F.3d 235, 243 (5th Cir. 2018).  And courts recognize that the supervision and treatment of sexually violent predators often requires state officials to make "difficult policy choices." *Id.*

Not every restriction imposed during civil commitment "amounts to punishment in the constitutional sense." *Bell*, 441 U.S. at 537.  Even restrictions that are discomforting or that the committed person would not experience in the free world may be permissible. *Id.* at 540.  "Due process requires only that 'the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Brown,* 911 F.3d at 243 (quoting *Seling v. Young*, 531 U.S. 250, 265 (2001)).  Relevant here, Texas's civil commitment scheme is premised on the "twin goals 'of long-term supervision and treatment of sexually violent predators." *Id.* (citing Tex. Health & Safety Code § 841.001; *In re Commitment of Fisher*, 164 F.W.3d 637, 651 (Tex. 2005)).

5.      **Discussion**

A.      **Subject-Matter Jurisdiction**

It is well established that "neither a State nor its officials acting in their official capacities are 'persons'" who may be sued for monetary damages under Section 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, the Court lacks subject-matter

jurisdiction over Plaintiff's official-capacity claims against McLane to the extent that he seeks monetary relief.

Additionally, "[t]he Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). And, as argued by McLane, the State has not forfeited its immunity here through either consent or congressional abrogation. "But under the rule of *Ex parte Young*, 209 U.S. 123[ ](1908), 'a federal court may enjoin a state official in his official capacity from taking future actions in furtherance of a state law that offends federal law or the federal Constitution.'" *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 396 (5th Cir. 2025). For a suit against a state official to proceed under *Ex parte Young*, "three criteria must be satisfied: (1) [the] 'plaintiff must name individual state officials as defendants in their official capacities'; (2) the plaintiff must 'allege[ ] an ongoing violation of federal law'; and (3) the relief sought must be 'properly characterized as prospective.'" *Id.* (quoting *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020)).

Here, Plaintiff alleges that McLane implemented and continues to enforce unconstitutional policies. So, to the extent he seeks prospective injunctive relief, the Court finds that it has subject-matter jurisdiction to review his claims under the *Ex parte Young* exception. But the Court lacks jurisdiction over any claim for retrospective declaratory relief.

For these reasons, the Court grants in part Defendant McLane's motion under rule 12(b)(1) and dismisses Plaintiff's official-capacity claims against Defendant McLane for monetary relief and retrospective declaratory relief for lack of subject-matter jurisdiction.

### B.    Statute of Limitations

Next, McLane asserts that several of Plaintiff's claims are time-barred.  Federal courts apply the state's general personal-injury limitation period to Section 1983 claims. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989).  The applicable limitation period in Texas is two years.  Tex. Civ. Prac. & Rem. Code § 16.003(a); *see also Piotrowski v. City of Houston*, 51 F.3d 512, 514 n.5 (5th Cir. 1995).  Plaintiff filed his original complaint here on November 7, 2024; so, his claims are untimely if they accrued before November 7, 2022.  A cause of action accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the action.  *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1981).

McLane contends, and Plaintiff's pleadings demonstrate, that he was aware of TCCO Policy 3.5 when it was first applied to him in January 2016.  And after he chose not pay the assessed costs, he knew that his cost-recovery debt continued to increase from 2016– 2021.  He knew of his alleged injuries from the cost-recovery policy, as well as TCCO Policy 3.38, in April 2017 when his first privileges were restricted and again in June 2019 when more of his privileges were restricted and a financial literacy course was added to his treatment requirements.  But he waited until November 2024—more than seven years after he was first injured by the challenged policies—to bring this civil action.  As a result, his challenge to TCCO Policies 3.5 and 3.38 are more than five years overdue.

He also knew of TCCO Policy 3.36 sometime before July 2022 when he had to continue wearing a GPS ankle monitor despite his promotion to Tier 3.  Similarly, he knew of TCCO Policies 4.1 and 4.5 and their application to him in July 2022 when he was reduced from Tier 3 to Tier 2 after refusing to participate in treatment.  But he did not file

this lawsuit for another two years and four months. Thus, Plaintiff's challenges to TCCO Policies 3.36, 4.1, and 4.5 were filed four months after the limitation period expired.

Plaintiff argues that his claims should be treated as timely because of the continuing violations doctrine. Dkt. No. 28 at 16. The continuing violations doctrine is a form of equitable tolling. *Texas v. United States*, 891 F. 3d, 553, 562 (5th Cir. 2018). But the continuing violations doctrine applies in only limited circumstances, allowing a plaintiff to "complain of otherwise time-barred acts . . . if it can be shown that the [injury] manifested itself over time, rather than in a series of discrete acts." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). And the Fifth Circuit cautions courts "not to confuse continuous violations with a single violation followed by continuing consequences; only continuous unlawful acts can form the basis of a continuous violation." *McGregor v. Louisiana State Univ. Bd. Of Sup'rs*, 3 F.3d 850, 867 (5th Cir. 1993).

Here, Plaintiff complains of policies that have remained in effect since at least 2021. *See* Dkt. No. 15. And his alleged injuries from those policies occurred in a series of discrete acts, each of which he knew about between January 2016 and July 2022. Dkt. No. 14 at 9–12. He alleges that McLane violated his due process rights by depriving him of privileges under these policies in 2017, 2019, and July 2022. Even if the effects of those alleged violations linger today, the continuing violation theory does not save his claims. *McGregor*, 3 F.3d at 867. Thus, the Court agrees with McLane that these claims are time-barred.

Plaintiff complains of only two injuries that potentially accrued after November 7, 2022. He asserts that he was demoted a second time, from Tier 2 to Tier 1, on March 2, 2023, under McLane's treatment-refuser policy. And because of his reduced Tier 1 status, Defendant MTC confiscated his television.

15

McLane argues that the second demotion is immaterial for limitations purposes because Plaintiff was aware of the policy and its application when he was first demoted from Tier 3 to Tier 2 in July 2022.  Dkt. No. 24 at 21.  But to the extent that his March 2023 tier reduction is a discrete event accompanied by new privilege restrictions, the Court finds that Plaintiff's claim is timely.[3]

### C.     Res Judicata

Next, McLane argues that any challenges Plaintiff makes to the constitutionality or retroactive application of the SVPA are barred by res judicata, collateral estoppel, and stare decisis.  Plaintiff counters that most of McLane's arguments here are irrelevant because he does not intend to challenge the SVPA or the 2015 amendments to it as a whole.

He clarifies that the only portion of the SVPA that he challenges here is Section 841.084, which was amended in 2015 to expand the required payment of costs for civilly committed individuals.  Specifically, he argues that Section 841.084 as amended should not be retroactively applied to him because its effective date was after his civil commitment became final.  He concedes that this argument is "potentially" barred by res judicata because he previously challenged the constitutionality of the 2015 amendments to Chapter 841 as applied to him.  Dkt. No. 28 at 18–19.  *See Ex parte Williams*, No. 09–24–00068–CV, 2024 WL 3199136, at *6 (Tex. App.—Beaumont, June 27, 2024) (explaining that the 2015 amendments to the SVPA apply to Plaintiff as a matter of law and are not unconstitutional as applied to Plaintiff).

---

[3] Defendant MTC does not dispute the timeliness of the television claim.

Because Plaintiff appears to concede that he has raised and fully litigated a virtually identical claim before, his claim about the retroactive application of Section 841.084 is barred by res judicata and collateral estoppel as argued by McLane.

But in any event, as the state appellate court explained, Plaintiff's claim that the amended Section 841.084 does not apply to him is plainly wrong. *Williams*, 2024 WL 3199136, at *6 (finding that Plaintiff's "misguided arguments" that the amendments to the SVPA "would not apply to anyone civilly committed before June 17, 2015 . . . . would be expressly contrary to the statute"). As amended, the statute provides that a civilly committed person who is not indigent is responsible for the costs of housing, treatment, and GPS tracking equipment services.[4] Tex. Health & Safety Code § 841.084(a)(1). And the statute requires the TCCO to determine each civilly committed individual's monthly payment. § 841.084(a)(2). Although the amended language took effect in June 2015, it does not specify that it only applies to persons civilly committed after that date. Rather, by its plain language, both before and after the 2015 amendment, the statute applies to all civilly committed persons who are not indigent. When the amendment became effective, Plaintiff was a civilly committed person who was not indigent, so the statute, as amended, applies to him.[5]

Although this misinterpretation of the statute underlies many of Plaintiff's claims, he focuses his complaint on the policies promulgated by McLane and MTC rather than the SVPA itself.

---

[4] The prior version of the statute only required civilly committed persons to pay the cost of GPS tracking.

[5] Likewise, the statute has been amended three more times since the 2015 amendment, with the most recent amendment effective September 1, 2025.

### D.    Substantive Due Process

Plaintiff's core complaint is that Defendants' policies are punitive in violation of his Fourteenth Amendment substantive due process rights.  Defendant McLane asserts that each of the TCCO policies of which Plaintiff complains is reasonably related to the twin purposes of civil commitment—long-term supervision and treatment of SVPs.  Plaintiff does not refute the policies' reasonable relationship to the purposes of civil commitment. Instead, at most, he disagrees that the policies are effective in incentivizing or supporting treatment progress.  And he insists that even if the policies bear a reasonable relationship to his treatment and supervision, they still amount to punishment because they are restrictive.

But Plaintiff misses the point.  The Fourteenth Amendment does not prohibit conditions that are restrictive or uncomfortable, so long as those conditions are reasonably related to the purpose of confinement.  In other words, if the defendants' policies are reasonably related to the purposes of civil commitment, then, by definition, they are not punitive.  Here, as argued by McLane, each of the challenged TCCO policies is reasonably related to civil commitment's goals of long-term supervision and treatment.  Likewise, MTC's electronics policy is reasonably related to the twin goals of civil commitment.  Thus, Plaintiff has failed to state a viable substantive due process claim.

As McLane explains, TCCO Policy 3.5, the cost-recovery policy, is not arbitrary punishment; the policy fulfills a statutory requirement of civil commitment.  Moreover, the privilege-restriction components of TCCO Policies 3.5, 3.36, 3.38, and 4.5 are reasonably related to Plaintiff's long-term supervision and treatment because they are meant to incentivize civilly committed SVPs to progress in treatment and disincentivize regression.

And the GPS tracking policies are reasonably related to the goal of long-term supervision. Indeed, the Texas Supreme Court has confirmed that the SVPA's statutory "constraints . . . , [including] requiring the SVP to submit to tracking and refrain from tampering with tracking equipment" are not punitive but are "rationally connected to [the SVPA's] 'twin goals of long-term supervision and treatment.'" *Fisher*, 164 S.W.3d at 641, 645, 648 & n.11, 651. Similarly, polygraph and PPG examinations are useful tools to assess treatment progress, so they are reasonably related to the goals of civil commitment.

The Fifth Circuit has recognized that requiring polygraph exams could violate a civilly committed person's Fifth Amendment right to avoid self-incrimination when the requirement implicates criminal liability. *Bohannan v. Doe*, 527 F. App'x 283, 296 (5th Cir. 2013). But that concern is obviated here because TCCO Policy 3.38 does not subject TCCC residents to criminal liability. Instead, it conditions package and commissary privileges on participation in "all required treatment activities" including polygraphs, PPGs, and cost-recovery payments. Thus, the policy is reasonably related to the goal of treatment and does not offend either the Fifth Amendment or the Fourteenth Amendment.

Plaintiff also complains that, under Policy 3.38, package and commissary privileges are restricted for any civilly committed SVP with pending criminal charges.[6] He asserts that restricting privileges based on pending criminal charges violates the presumption of innocence and inflicts punishment without a conviction. But again, the Court finds that the policy bears a reasonable relationship to the goals of civil commitment. Disincentivizing criminal activity supports the goal of long-term supervision as well as the goal of treatment

---

[6] Plaintiff makes only a facial challenge to the policy—he does not allege that he had criminal charges pending or that his privilege restrictions were based on any pending charges. As McLane argues, Plaintiff lacks standing to bring this challenge on behalf of other civilly committed persons, and he has alleged no personal harm from this portion of the policy.

progression.  Moreover, as argued by McLane, package and commissary privileges are *de minimis* comforts that do not trigger due process concerns.  *See San Miguel v. McLane*, 2024 WL 747232, at *9 (5th Cir. 2024); *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 3241 (5th Cir. 2021).

Plaintiff does not have a due process right to have his cost-recovery debt collected in a particular manner.  McLane had no duty to enact rules under Texas Government Code § 2107, which addresses the Attorney General's uniform guidelines for state agencies to collect delinquent debt obligations.  *See Matzen v. McLane*, 604 S.W.3d 91, 106 (Tex. App.—Austin, 2020), *reversed in part on other grounds*, 659 S.W.3d 381 (Tex. 2021, reh'g denied). But as discussed above, Texas Health & Safety Code § 841.084 requires the TCCO to assess and collect cost-recovery payments from civilly committed persons who are not indigent. TCCO Policy 3.5 comports with this statutory requirement.  And the state legislature integrated the responsibility for costs into the requirements of civil commitment.   § 841.084. Thus, Policies 3.5, 3.36, and 3.38 reasonably relate to and support the goals of long-term supervision and treatment of SVPs.  Plaintiff has failed to state a viable substantive due process claim related to his cost-recovery debt obligations or the resulting privilege restrictions.

Next, the Court finds that Plaintiff has failed to plausibly allege a substantive due process violation with regard to TCCO Policy 4.1's provisions for movement between tiers. Plaintiff does not contend that Policy 4.1 is punitive; he argues that the tier-reduction provision is so vague that it fails to give fair notice of the conduct that it proscribes.  Civil commitment is a civil process governed by civil rules and statutes.  A civil statute or rule "is unconstitutionally vague only if it commands compliance in terms 'so vague and indefinite

as really to be no rule or standard at all,' . . . or if it is 'substantially incomprehensible.'"
*United States v. Clinical Leasing Serv., Inc.*, 925 F.2d 120, 122 n.2 (5th Cir. 1991) (internal
citations omitted) (collecting cases).  A rule must "give the person of ordinary intelligence a
reasonable opportunity to know what is prohibited, so that he may act accordingly."
*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

TCCO Policy 4.1 describes the tiered treatment program, designed to "provide a
seamless transition from total confinement to less restrictive housing and supervision based
on the client's individual behavior and progress in treatment."  Dkt. No. 15 at 21.  It defines
the parameters and goals of each tier and sets criteria for progressing from each tier to the
next.  *Id.* at 23.  Plaintiff challenges provision II.E, which provides that "[a] client who
demonstrates a regression in treatment or behavior may be reduced in tier as determined by
the Treatment Team."  *Id.* at 24.

Plaintiff asserts that the provision is too subjective and that "a person of reasonable
intelligence might struggle to identify in advance what conduct would offend the treatment
team."  Dkt. No. 28 at 41.   The Court disagrees.  Provision II.E cannot be considered in
isolation.  The provision is found in in the middle of the fourth page out of seven total pages
that comprise Policy 4.1.  Dkt. No. 15 at 24.  Importantly, it follows the detailed
descriptions of the scope and purposes of each tier and the enumerated criteria for
progressing from each tier to the next.  *Id.* at 22–24.  When "words are given their ordinary
meaning and read in context of the policy as a whole, the standard laid out is
understandable and hardly incomprehensible."  *Hiers v. Bd. of Regents of the Univ. of N. Texas
Sys.*, No. 4:20-CV-321-SDJ, 2022 WL 748502, at *20 (E.D. Tex. Mar. 11, 2022).

Moreover, "vagueness challenges . . . must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975). "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982). Here, Plaintiff's tier was reduced twice—each time because of his refusal to participate in treatment. Dkt. No. 14 at 16. Plaintiff acknowledges that this conduct—refusing to participate in treatment—is clearly proscribed. Indeed, he admits that Policy 4.5—the treatment-refuser policy—clarifies that an SVP client who continues to refuse to participate in treatment may be recommended for a tier reduction. *Id.*; Dkt. No. 15 at 20. In other words, neither of his tier reductions were the result of his treatment team's unpredictable whimsy, nor were they based on an indefinite or subjective determination of treatment regression under Policy 4.1. As a result, Plaintiff has failed to show that Policy 4.1 is unconstitutionally vague on its face or that its application violated his substantive due process rights.

Finally, MTC's electronics policy, which allows residents in Tiers 2, 3, and 4 of the treatment program to possess televisions is not unconstitutionally punitive. MTC Policy 906TH-12-18-1 sets out and delineates the programming, housing, management, and privileges that correspond with each treatment tier. Dkt. No. 15 at 28. Like the TCCO Policies discussed above, the MTC policy provides for increased privileges as residents progress to higher treatment tiers. Dkt. No. 25 at 6. Thus, MTC's policy bears a reasonable relationship to the goals of civil commitment because it incentivizes progress in treatment. As a result, Plaintiff has failed to plausibly allege that MTC's policy violates his substantive due process rights.

In sum, each of the policies of which Plaintiff complains bears a reasonable relationship to civil commitment's twin goals of long-term supervision and treatment of SVPs. Defendants' policies plainly incentivize progression through the tiered treatment program. Moreover, Policy 4.1 clearly defines the parameters and goals of each treatment tier and the criteria for progression. By design, Tier 1 is more restrictive and less comfortable than the other tiers, and each tier progression comes with increased privileges and comforts. Conversely, Defendants discourage treatment regression or stalls by restricting privileges for failure or refusal to participate in the requirements of treatment. Thus, Defendants' policies satisfy the Fourteenth Amendment's substantive due process requirements.

### E.    Procedural Due Process

Next, the Court turns to Plaintiff's procedural due process claims. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court has adopted a two-step analysis to examine whether an individual's procedural due process rights have been violated. First, court must determine whether the State interfered with a constitutionally protected interest, and then the court must examine the sufficiency of the procedures associated with the deprivation. *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010) (citing *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Process is generally sufficient if it provides for notice and the opportunity to be heard. *See Mathews. v. Eldridge*, 424 U.S. 319, 333, 348 (1976); *see also Goss v. Lopez*, 419 U.S. 565, 579 (1975) (explaining that students facing "interference with a protected property interest must be

given some kind of notice and afforded some kind of hearing" to satisfy the minimum requirements due process). But "[p]rocedural due process is 'a flexible concept,' and the procedural protections due under the Fourteenth Amendment vary depending on the circumstances." *Richards v. McLane*, No. 21-20450, 2023 WL 6533453, at *7 (5th Cir. Oct. 6, 2023) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

Plaintiff asserts that he has a statutory right to have his delinquent debt referred to the Attorney General for collection, and that McLane's Policy 3.5 deprived him of the process required by Section 2107 of the Texas Government Code. But as discussed above, Plaintiff has no constitutionally protected interest in any particular manner of debt collection. Moreover, although Plaintiff would prefer the Attorney General's collection process, he does not allege that McLane's Policy 3.5 is procedurally insufficient. To the contrary, his pleadings and attachments make clear that he received notice of the initial cost-recovery assessment and periodic notices of his increasing debt obligation. Dkt. No. 14 at 9–11. And Plaintiff had access to, and eventually used, the facility's grievance procedure to address his concerns over his cost-recovery debt. *See* Dkt. No. 15 at 48–49. Moreover, Policy 3.5 expressly provides for notice and regular review of each resident's cost-recovery obligations. *See* Dkt. No. 15 at 4. As a result, the Court finds that Plaintiff has failed to state a viable procedural due process claim related to the assessment of his cost-recovery obligations under TCCO Policy 3.5.

Next, Plaintiff complains that his privileges were restricted under Policies 3.5, 3.38, 3.36, and 4.5 "without affording him any due process safeguards." Dkt. No. 14 at 21. He contends that each of these policies "fail[s] to require due process protection and are the moving force behind the constitutional violation." *Id.* First, as discussed above, Plaintiff

does not have a constitutionally protected interest in minor privileges and comforts. *See Welsh*, 845 F. App'x at 324 (affirming that the denial of electronics, snacks, and clothes, and the restriction of commissary and recreation privileges, "did not trigger due process protections"). Second, the Court notes that each of these policies explicitly defines the requirements for eligibility for particular privileges. And the policies for treatment-refuser designation and tier reduction include additional notice and review. *See* Dkt. No. 15 at 18–19 (providing for Case Conferences and ongoing meetings to address treatment refusal); *Id.* at 25 (providing for documentation and review of tier assignment and modification). "When . . . a state agency adopts a regulation[] that affects a general class of persons, all of those persons have received procedural due process by the legislative process itself and they have no right to individual attention." *United States v. LULAC*, 793 F.2d 636, 648 (5th Cir. 1986). Plaintiff received all the process he was due, and he is not entitled to more process than is constitutionally required. *See Matzen*, 659 S.W.3d at 392.

Finally, Plaintiff asserts that MTC confiscated his television without affording him due process. As argued by MTC, Plaintiff does not have a constitutionally protected interest in watching television. But to the extent that he had a property interest in his television, his pleadings show that he was afforded all the process he was due. MTC confiscated Plaintiff's television after Plaintiff's treatment status was reduced to Tier 1. As explained above, Plaintiff was afforded due process around his treatment-refusal designation and tier reductions under TCCO Policies 4.5 and 4.1. *See* Dkt. No. 15 at 60. And MTC's tiered housing policy, 906TH-12-18-1, excludes televisions from the list of allowed electronics for Tier 1 residents. Thus, Plaintiff had notice that, if he continued to refuse treatment, and he returned to Tier 1 status, he would no longer be permitted to possess a

television. And Plaintiff used the facility's grievance procedure to challenge the confiscation of his television. Dkt. No. 15 at 62–63. "Post-deprivation . . . grievance procedures are adequate to satisfy [due process] requirements with respect to confiscation of property pursuant to [facility] regulations." *Matez v. Foley*, No. 2:17-CV-134-Z, 2020 WL 2926464, at *4 (N.D. Tex. June 3, 2020) (collecting cases). As a result, Plaintiff received all the process he was due, and he has failed to state a viable claim for the confiscation of his television.

### F.    Qualified Immunity

As explained above, Plaintiff has not pled facts to overcome Defendant McLane's entitlement to qualified immunity on his individual capacity claims. Plaintiff has failed to plausibly allege a violation of any constitutional right, much less one that is clearly established. And, because each of the challenged policies is reasonably related to the twin goals of civil commitment, Plaintiff has failed to show that McLane's actions in implementing or applying the policies was objectively unreasonable. As a result, the Court finds that Defendant McLane is entitled to qualified immunity.

### G.    State-Law Claims

Because the Court finds that Plaintiff has stated no viable constitutional claim, the Court declines to exercise supplemental jurisdiction over any remaining state-law claims. 28 U.S.C. § 1367(c)(3).

6.      **Conclusion**

For the reasons discussed above, Defendants McLane and MTC's motions to dismiss are granted.  Additionally, Plaintiff's motion for partial preliminary injunction is denied.[7] The Court dismisses Plaintiff's complaint with prejudice.

Dated September 26, 2025.

James Wesley Hendrix
United States District Judge

---

[7] A party seeking a preliminary injunction or temporary restraining order must establish the four prerequisites for a restraining order, including (1) a substantial likelihood of success on the merits of his case; (2) a substantial threat that the failure to grant an injunctive order will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunctive order might cause the defendant; and (4) that the order will not be adverse to the public interest.  *Women's Med Ctr. v. Bell*, 248 F.3d 411, 418-20 (5th Cir. 2001); *Dallas Cowboys Cheerleaders v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979).  A failure to prove any of the four elements will result in the denial of injunctive relief.  *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).  The Court has dismissed Plaintiff's complaint and all claims within it.  Thus, he cannot demonstrate a substantial likelihood of success on the merits.